IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JULIE G. JENKINS, as Trustee of the Albert Felton Jenkins, Jr. Testamentary Trust,<br><br>    Plaintiff,<br>v.<br><br>RIVIAN AUTOMOTIVE, LLC, RIVIAN HORIZON, LLC, THOMAS & HUTTON ENGINEERING, INC., and PLATEAU EXCAVATION, INC,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO._____<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

For her Complaint against Defendants Rivian Automotive, LLC and Rivian Horizon, LLC (collectively "Rivian"), Thomas & Hutton Engineering, Inc. ("T&H"), and Plateau Excavation, Inc. ("Plateau"), (collectively "Defendants"), Plaintiff Julie G. Jenkins, as Trustee of the Albert Felton Jenkins, Jr. Testamentary Trust ("Plaintiff") alleges the following:

## STATEMENT OF JURIDICTION AND VENUE

1. This case constitutes a citizen's suit under the federal Clean Water Act pursuant to 33 U.S.C. § 1365 which vests federal subject matter jurisdiction in this Court pursuant to 33 U.S.C. § 1365(a).

2. The water pollution discharge which gives rise to this action is located in Morgan County, Georgia, placing venue in this Court pursuant to 33 U.S.C. § 1365(c)(1).

3. More than sixty (60) days prior to the filing of this Complaint, Plaintiffs provided ante-litem notice to Defendants, the United States Environmental Protection Agency, and the Georgia Environmental Protection Division, as required by 33 U.S.C. § 1365(b)(1)(A) pursuant to a letter dated December 29, 2022. A copy of that notice letter, including copies of receipts reflecting the mailing of those notice letters, is attached hereto as **Exhibit A**.

4. Pursuant to 33 U.S.C. § 1365(c)(3), Plaintiffs will serve a copy of this Amended Complaint upon the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency.

5. This Court has supplemental jurisdiction over the related state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction and venue over all Defendants.

## BACKGROUND

7. Plaintiff Julie G. Jenkins is the Trustee of the Albert Felton Jenkins Testamentary Trust and in that capacity is the owner of properties (collectively "Jenkins Property") in Morgan County, Georgia that include portions of Rawlings Branch, a perennial stream that is a tributary of the Oconee River and is therefore a tributary to the navigable waters of the United States that is subject to protection under the federal Clean Water Act.

8. One of those properties includes ownership of Rawlings Branch to its center line on a free-flowing section of that stream. Another of those properties includes a pond ("Jenkins Pond") approximately three (3) acres in size which is fed by Rawlings Branch and through which Rawlings Branch flows.

9. But for the discharges of sediment-laden, muddy pollutants discharged from point sources at the Rivian Site (as described below) into Rawlings Branch and thence in Rawlings Branch to the Jenkins Property that are the subject of this Complaint (and other discharges of sediment-laden, muddy pollutants from property owned by Danny Bruce that are not the subject of this action), Plaintiff Jenkins and her family have valued and enjoyed the generally clear waters of Rawlings Branch and Jenkins Pond.

10. The Jenkins Property is located downstream on Rawlings Branch to the east of a property located in Walton County and Morgan County consisting of approximately 2000 acres ("Rivian Site") acquired by the State of Georgia ("State"), leased to the Joint Development Authority of Jasper County, Morgan County, Newton County, and Walton County ("JDA"), and prospectively subleased to Rivian for the purpose of the construction of an industrial facility on a portion thereof by and for Rivian.

11. The bulk of the Rawlings Branch's headwaters section lies on the Rivian Site in Walton County and Morgan County. That section ends when Rawlings Branch crosses underneath Old Mill Road and flows from there to and through the Jenkins Property. The headwaters section of Rawlings Branch that lies on the Rivian Site is a perennial stream that begins at a spring on the Rivian Site and is subject to Clean Water Act jurisdiction.

12. On December 16, 2021, the State announced the plan for the development of the Rivian Site which stated that the "company [Rivian] is <u>actively working to ensure that both the construction process and future facility ... meet Rivian's high standards of conservation</u> and sustainability <u>for a cleaner, wilder future</u>." (Emphasis Added) On the State's website for the Rivian project it stated:

"Rivian cited Georgia as a sustainable place to do business, with <u>carefully dedicated siting for minimal environmental impact</u>...." (Emphasis added)

13. On May 2, 2022, the State, JDA, and Rivian entered an Economic Development Agreement ("EDA") in anticipation of the development of the Rivian Site with a Rivian industrial facility for the assembly of electric vehicles and the manufacture of batteries for such vehicles.

14. Pursuant to the terms of the EDA, it was agreed that the State and JDA would work with Rivian to provide and/or pay for engineering and permitting for the clearing, grubbing, and mass grading of a 500 acre portion of the Rivian Site as depicted on Exhibit A.11.1 of the EDA to advance its development plan.

15. With knowledge and involvement of Rivian for its benefit, and pursuant to the terms of the EDA, T&H was retained to provide engineering services, including the preparation of an erosion and sedimentation pollution control plan ("ESPCP") and associated permitting involvement, for the clearing, grubbing, and mass grading of portions of the Rivian Site for the anticipated Rivian development.

16. T&H's permitting involvement included preparation of an ESPCP for clearing, grubbing, and mass grading at the Rivian Site, preparation, and the September 6, 2022 submission to the Georgia Environmental Protection Division ("GAEPD") of a Notice of Intent to be governed by and comply with the terms of a

5

NPDES General Permit to Discharge Storm Water Associated With Construction Activity ("General Permit") as issued under its delegated authority pursuant to the federal Clean Water Act. A copy of the above-referenced Notice of Intent is attached hereto as **Exhibit B**.

17. The above-referenced Notice of Intent identified only Henry Evans as the owner and operator for purposes of coverage by the General Permit as to a common development name of "Stanton Springs North – Rough Grade Phase 1A and 1B."

18. On information and belief, Henry Evans was an officer of the Georgia Department of Economic Development.

19. The Notice of Intent did not identify Rivian, JDA, T&H, or Plateau as owner or operator for NPDES permitting purposes.

20. Although the State and JDA agreed with Rivian in the EDA to provide or pay for engineering, permitting, clearing, grubbing, and grading of only that certain 500 acre portion of the Rivian Site depicted on Exhibit A.11.1 of the EDA, the Notice of Intent stated the intention to engage in land disturbing activity on 737 acres of the Rivian Site, with much of the additional acreage in environmentally-sensitive, forested stream areas.

21. Although the State and JDA agreed with Rivian in the EDA to pay for up to a maximum amount of $32,340,000 for the cost of clearing, grubbing, grading, and associated erosion and sedimentation ("E&S") controls of the above-referenced 500 acres, the JDA gave Notice of Award of the clearing, grubbing, grading, and E&S control contract to Plateau for the benefit of Rivian under a contract price of $42,340,247.61. A copy of the Notice of Award is attached hereto as **Exhibit C**.

22. Although the ESPCP prepared by T&H and submitted to GAEPD for review was not compliant with the requirements of the General Permit, particularly with respect to E&S controls necessary to prevent sediment pollution of streams at and downstream of the Rivian Site, including Rawlings Branch, and a GAEPD representative wrote to T&H notifying it of such non-compliance, Plateau proceeded to engage in land disturbing activity in the form of topsoil stripping and mass grading while such ESPCP was still inadequate and prior to installation of E&S controls required by the General Permit.

23. On October 12-13, 2022, a rain event of 1.25", well below the intensity of a 25 year frequency storm event which a compliant ESPCP and installed E&S controls are required to prevent sediment pollution discharges into streams, resulted in the overwhelming of inadequate E&S controls adjacent to Rawlings Branch at the Rivian Site and significant sediment pollution discharges from point sources at the

Rivian Site into Rawlings Branch, with the polluted waters of Rawlings Branch flowing downstream from the Rivian Site to the Jenkins Property.

24. On numerous occasions thereafter, rain events with amounts far less than the amount of a 25-year frequency rain event have resulted in significant sediment pollution discharges from point sources at the Rivian Site into Rawlings Branch, with the polluted waters of Rawlings Branch flowing downstream from the Rivian Site to the Jenkins Property.

25. Notwithstanding the known inadequacy of the ESPCP prepared by T&H and the E&S controls installed by Plateau, T&H has failed to revise the ESPCP and Plateau has failed to install and maintain E&S controls which are adequate to prevent sediment pollution of Rawlings Branch from point sources at the Rivian Site which sediment pollution has flowed downstream to the Jenkins Property.

26. The failure by T&H to design and the failure of Plateau to install adequate E&S controls in compliance with the requirements of the General Permit have constituted and continue to constitute violations of the federal Clean Water Act and the General Permit issued thereunder for each day of such violations.

27. Such failures, in combination with the resulting discharges of sediment pollution into Rawlings Branch from point sources on the Rivian Site in amounts resulting in a substantial visual muddy contrast in its waters and/or in excess of 25

nephelometric turbidity units, constitute additional violations of the federal Clean Water Act and the General Permit issued thereunder for each day of such violations.

28. As referenced in the December 29, 2022 notice letter attached hereto as Exhibit A, at least one detention pond that has been retrofitted to serve as a sediment basin during the construction phase was installed at the Rivian Site adjacent to Rawlings Branch so as to penetrate into and expose the groundwater layer and create a spring there. That spring and its associated groundwater is connected, *inter alia*, to Rawlings Branch. As sediment-laden storm water has been and continues to be discharged from graded areas into and from such sediment pond during the construction phase of the Rivian project, and as polluted storm water from a planned railroad yard is discharged into that detention pond in the post-construction phase of the Rivian project, the pond and its connection to groundwater and Rawlings Branch have constituted and will constitute unpermitted point source discharges of pollutants from the Rivian Site into Rawlings Branch and downstream to the Jenkins Property.

29. The above-referenced pollution discharges, failures and violations are and have been known to Rivian at least since the time of its receipt of the December 29, 2022 notice letter attached hereto as Exhibit A, but it has failed to cause their correction and has ratified them by such failure.

30. Sediment pollution of Rawlings Branch at the Rivian Site and downstream to and through the Jenkins Property continues to exist and requires abatement.

31. Each of the Defendants has failed to act reasonably to assure that Rawlings Branch at the Rivian Site and downstream to and through the Jenkins Property is not polluted by sediment originating from the Rivian Site and will not be polluted in the future following completion of construction of the railyard at the Rivian Site.

32. Each of the Defendants has failed to act reasonably to prevent, abate, and remediate the continuing sediment pollution of Rawlings Branch and the Jenkins Property after having been placed on notice of such pollution and the E&S problems at the Rivian Site causing such pollution.

33. Photographs showing the sediment-polluted waters of Rawlings Branch as it flows downstream from its Old Mill Road crossing onto the Jenkins Property and further downstream into the Jenkins Pond on the Jenkins Property are attached hereto as **Exhibits D-1, D-2, and D-3.**

34. Rivian is vicariously liable for the acts and omissions of the State, JDA, T&H, and Plateau pursuant to O.C.G.A. § 51-2-5 which states:

An employer is liable for the negligence of a contractor:

(1) When the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance;

(2) If, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed;

(3) If the wrongful act is the violation of a duty imposed by express contract upon the employer;

(4) If the wrongful act is the violation of a duty imposed by statute;

(5) If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference; or

(6) If the employer ratifies the unauthorized wrong of the independent contractor.

30. Here, the grading and deficient E&S planning, installation, and maintenance activities that have been performed by T&H and Plateau as contractors to the State and/or JDA and which are the subject of this action have been done a)

for the purpose, to the extent of the 500 acres depicted on Exhibit A.11.1 of the EDA, of the State and JDA performing their contractual duties to Rivian under the terms of the EDA, b) in violation of statutory duties under the federal Clean Water Act, the Georgia Water Quality Control Act, and the Georgia Erosion and Sedimentation Act, and c) with ratification by Rivian.  Accordingly, Rivian is at least vicariously liable for such conduct.

31. On information and belief, Rivian has also aided and abetted the State, JDA, T&H, and Plateau with respect to their acts and omissions and otherwise caused and contributed to the acts, omissions, violations, and harms that are the subject of this action, all notwithstanding its commitment to "ensure that both the construction process and future facility ... meet Rivian's high standards of conservation and sustainability for a cleaner, wilder future" and that it would engage in "carefully dedicated siting for minimal environmental impact...."

32. In short, Rivian appears to have engaged in "greenwashing" with respect to the planning and development of the Rivian Site.

**COUNT ONE – CLEAN WATER ACT VIOLATIONS**

33. The allegations contained in paragraphs 1 – 32 above are incorporated by reference in this count as if fully stated herein.

34. The above-referenced pollution of Rawlings Branch at and downstream of the Rivian Site, including but not limited to the portions of Rawlings Branch on the Jenkins Property, from point sources at the Rivian Site for which Defendants have responsibility is continuing and likely to be repeated as of and/or following the date of filing this Complaint on April 21, 2023 and has resulted in repeated and continuing violations of effluent standards and limitations under the federal Clean Water Act as referenced in its citizen suit provisions at 33 U.S.C. § 1365(f).

35. Plaintiff's interests in Rawlings Branch have been and continue to be adversely affected by such violations, and Plaintiff therefore has standing to bring this action pursuant to the citizen suit provisions of 33 U.S.C. § 1365.

36. Defendants' acts and omissions have caused and contributed to the above-referenced violations such that Defendants are liable for such violations and for civil penalties, abatement of the subject pollution, and expenses of litigation, including reasonable attorney's fees, pursuant to the federal Clean Water Act.

## COUNT TWO – NEGLIGENCE/NEGLIGENCE PER SE

37. The allegations contained in paragraphs 1 – 36 above are incorporated by reference in this count as if fully stated herein.

38. Pursuant to the federal Clean Water Act, Georgia Erosion and Sedimentation Act, the Georgia Water Quality Act, and the Georgia Solid Waste Management Act, and their corresponding regulations, Defendants each owe statutory duties not to cause or contribute to a violation of the standards, requirements, and prohibitions of such laws and regulations.

39. The harm to Plaintiff resulting from breach of these statutory duties is a type of harm these statutes were intended to guard against, and Plaintiff falls within a class of persons these statutes are intended to protect against such harm.

40. Defendants' acts and omissions have caused and contributed to the violation of the above-referenced statutory duties.

41. Defendants' acts and omissions constitute negligence per se.

42. Defendants have failed to exercise reasonable care with respect to the grading activity and E&S controls at the Rivian Site.

43. As a result of Defendants' acts and omissions, Plaintiff and their properties have been and continue to be harmed and damaged, with such acts and omissions being the proximate cause of such harm and damages.

44. Defendants are jointly and severally liable for such harm and damages.

45. Plaintiff is entitled to recover damages, including but not limited to general damages in an amount to be determined by the enlightened conscience of a jury, from Defendants.

46. Plaintiffs are also entitled to injunctive relief against Defendants so as to prevent and abate the continued pollution of Rawlings Branch from the Rivian Site downstream to the Jenkins Property.

### **COUNT THREE – TRESPASS AND NUISANCE**

47. The allegations contained in paragraphs 1 – 46 above are incorporated by reference in this count as if fully stated herein.

48. Sediment pollution of Rawlings Branch at the Jenkins Property has resulted and continues to result from the above-referenced acts and omissions of Defendants for which Defendants are and will continue to be responsible.

49. Such pollution constitutes an unreasonable interference with Plaintiff's property rights and a trespass and nuisance.

50. As a result of such trespass and nuisance, Plaintiff is entitled to recover damages, including but not limited to general damages in an amount to be determined by the enlightened conscience of a jury, from Defendants.

51. Plaintiff is also entitled to injunctive relief against Defendants so as to prevent the continuing trespass and nuisance resulting from the discharge of pollution from the Rivian Site.

## COUNT FOUR – EXPENSES OF LITIGATION, INCLUDING ATTORNEY'S FEES

52. The allegations contained in paragraphs 1 – 51 above are incorporated by reference in this count as if fully stated herein.

53. Defendants have acted in bad faith, been stubbornly litigious, and put Plaintiffs to unnecessary trouble and expense so as to entitle Plaintiff to an award of expenses of litigation, including reasonable attorney's fees, against Defendants pursuant to O.C.G.A. § 13-6-11.

## COUNT FIVE – PUNITIVE DAMAGES

54. The allegations contained in paragraphs 1 – 53 above are incorporated by reference in this count as if fully stated herein.

55. Defendants' acts and omissions involve willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences.

56. Defendants' acts and omissions constitute aggravating circumstances entitling Plaintiffs to an award of punitive damages against Defendants.

57. In light of Defendants' prior notice of continuing harm to Rawlings Branch and Plaintiff's property resulting from their acts and omissions and their failure to take action necessary to prevent the continuation of that harm, Defendants have acted or failed to act with specific intent to cause harm, such that the $250,000 punitive damage limit found in O.C.G.A. § 51-12-5.1 is inapplicable.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a) Under Count One, that judgment enter against Defendants for civil penalties, injunctive relief to abate the pollution of Rawlings Branch, and expenses of litigation, including reasonable attorney's fees;

b) Under Counts Two and Three, that judgment enter against Defendants for Plaintiff's damages, including but not limited to general damages in an amount to be determined by the enlightened conscience of a jury, and for injunctive relief to abate the pollution of Rawlings Branch;

c) Under Count Four, that judgment enter against Defendants for Plaintiff's expenses of litigation, including reasonable attorney's fees;

d) Under Count Five, that judgment enter against Defendants for punitive damages in an amount to be determined at trial;

e)   That a jury trial be had over all issues so triable; and

f)   Such other and further relief as is just and proper.

Respectfully submitted, this 21st day of April, 2023.

*/s/ Craig K. Pendergrast*
Craig K. Pendergrast
Georgia Bar No. 571155
cpendergrast@continuumLG.com
Sean R. Smith
Georgia Bar No. 663368
ssmith@continuumLG.com

CONTINUUM LEGAL GROUP LLP
5605 Glenridge Dr., Suite 600
Atlanta, GA 30342
(770) 800-3518

*Counsel for Plaintiff Julie G. Jenkins*
